

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-22-00295-CR

---

JESS ELLIOTT ANDREWS, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

---

On Appeal from the 90th District Court
Young County, Texas
Trial Court No. CR11827, Honorable Jerry Ray, Presiding by Assignment

---

April 4, 2023

## MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and YARBROUGH, JJ.

Jess Elliott Andrews appeals his conviction for injury to an elderly individual. One issue pends for disposition. It concerns the denial of his motion to suppress statements made during an interview with law enforcement officials. We affirm.[1]

---

[1] Because this matter was transferred from the Second Court of Appeals, we apply its precedent when it conflicts with that of the Seventh Court of Appeals. TEX. R. APP. P. 41.3.

### *Background*

Appellant lived with his eighty-seven-year-old grandmother. Friends noticed worsening bruising on the grandmother and took her to an urgent care facility from which she was referred to a hospital. The grandmother informed a physician that her grandson caused the bruising that was present all over her body. She was moved to a rest home where she resided at the time of trial.

Texas Ranger Michael Schraub testified he was called to aid in the investigation concerning the bruising on the grandmother. Appellant voluntarily appeared for an interview at the sheriff's office at the request of law enforcement. Schraub testified that, during an interview with himself and another officer, appellant confessed to squeezing and twisting his grandmother's breasts because he was frustrated with her and as an effort to force her to comply with his directives. A video of the interview was played in the presence of the jury. The statements were the subject of appellant's pretrial motion to suppress. After a hearing, the trial court denied the motion.

### *Analysis*

Again, appellant contends the trial court erred in denying his pretrial motion to suppress statements he made during a purported custodial interrogation. This is so because warnings required by *Miranda v. Arizona* and article 38.22, § 2 of the Code of Criminal Procedure were not afforded him during the interview. *See Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966); TEX. CODE CRIM. PROC. ANN. art. 38.22, § 2. Consequently, using the statements violated his Fifth Amendment privilege against self-incrimination and his Sixth Amendment right to assistance of counsel, according to him. We overrule the issue.

A trial court's denial of a motion to suppress is reviewed for abuse of discretion. *Wexler v. State*, 625 S.W.3d 162, 167 (Tex. Crim. App. 2021). We apply the standard, as described in *Wexler*, here

Next, the provision of warnings described in both *Miranda* and article 38.22, § 2 are dependent upon the accused being in custody. *Mahorney v. State*, No. 07-21-00197-CR, 2022 Tex. App. LEXIS 5300, at *5–7 (Tex. App.—Amarillo July 28, 2022, no pet.) (mem. op., not designated for publication); *Dock v. State*, No. 02-18-00462-CR, 2019 Tex. App. LEXIS 10123, at *10–11 (Tex. App.—Fort Worth Nov. 21, 2019, no pet.) (mem. op., not designated for publication). Custody may be established in several ways. The one urged by appellant involves the manifestation of an officer's knowledge of probable cause to the suspect in a way that, when "combined with other circumstances, would lead a reasonable person to believe she is under restraint to a degree associated with an arrest." *Wexler*, 625 S.W.3d at 168. Under this formula, the manifestation of probable cause is simply one factor to be considered in the total mix. *See Dock*, 2019 Tex. App. LEXIS 10123, at *16. But, irrespective of the means utilized, the test remains founded upon the perspective of a reasonable suspect, not the particular suspect, and what that person would have believed under the totality of the circumstances. And, when evaluating whether a reasonable person in the suspect's situation would have felt that there was a restraint on his freedom to a degree associated with arrest, the record must establish the objective circumstances experienced by him. *Id.* With that, we turn to the record at bar.

The trial court made findings of fact which appellant does not contest. They included the factual determinations that 1) appellant "came to the interview on September

3

22, 2021, voluntarily by means of his own transportation and he left voluntarily by means of his own transportation at the conclusion of the interview"; 2) "when [appellant] inquired as to whether he needed a lawyer, he was told by Ranger Schraub that, 'the door was closed for privacy only, it was unlocked and the [appellant] was free to leave and do whatever you want'"; 3) appellant "was not Mirandized at the outset of the interview as he was not in custody"; and 4) "[a]t no point during the interview did Defendant's status as being 'free to leave[]' change." Evidence supports each finding and also depicts the following.

First, appellant shook hands with Ranger Schraub before the interview and with both officials at its end as he left. Second, no passcode was needed to leave the facility. Nor was appellant at the mercy of law enforcement officials to leave for he could exit through one door by pushing the bar and another by pushing a button. Third, the interview transpired in an office, not an interrogation room, during which appellant was seated in a chair, as were the Ranger and another law enforcement official. Fourth, appellant sat nearest the door, while the others sat some distance away from him. Fifth, physical restraints, like handcuffs, were not used at any time. Sixth, no one told appellant he was under arrest for any charge. Nor was he arrested until several days later. Seventh, when appellant pondered about the need for a lawyer, Schraub iterated that he (appellant) was free to leave whenever he desired. Eighth, while the door was shut, appellant was told it was so for privacy, it was unlocked, and he was free to leave at any time. Ninth, the interview was conversational in tone and lasted about an hour. Tenth, no coercive communications were employed. Eleventh, though appellant was the sole suspect, others were interviewed as well. Twelfth, the Ranger believed he had probable cause to

4

arrest appellant, but no one iterated that to appellant during the interview. Thirteenth, the Ranger informed appellant that he (the Ranger) could have him (appellant) in custody if he cared to. Fourteenth, the Ranger's impetus for speaking with appellant was the desire to obtain the complete story. Fifteenth, appellant acknowledged his awareness of the investigation and the recording of their exchange. Sixteenth, appellant made both incriminating and mitigating statements during the interview.

A reasonable person would know that law enforcement officials investigate allegations of criminal activity and gather evidence which may inculpate or exculpate a suspect. This is especially true if that person, like appellant, had previously matriculated through the Texas penal system. Indeed, one could reasonably infer that the experiences garnered from that event would include knowledge of the *Miranda* warnings. So, it is difficult to say that a reasonable person in appellant's position would be entering the interview room with eyes closed or under a specter of ignorance.

Next, that the Ranger said he could place appellant in custody may be viewed as indicating the existence of probable cause to believe appellant committed the crime. Yet, again, the existence of probable cause alone does not equate custody. It is but one factor in the entire mix. Moreover, telling one that he could be placed in custody also indicates that he was not in custody at the time. Indeed, little sense underlies telling someone he could be in custody if he already were in custody.

These circumstances, coupled with appellant's voluntary appearance, shaking hands with the Ranger, the conversational tone of the exchange, being told he could leave, his leaving, and the other aforementioned circumstances would not lead a reasonable person to believe appellant was under the restraint mandated in *Wexler. See*

5

*Dock*, 2019 Tex. App. LEXIS 10123, at *16–19 (finding the interview noncustodial where the appellant voluntarily accompanied officers to the police station, was told he was free to leave, and did leave).  So, the trial court did not err in holding that the interview was noncustodial and the warnings in question were unnecessary.

Finding no abused discretion on the part of the trial court and having overruled appellant's sole issue, we affirm its judgment.

Brian Quinn
Chief Justice

Do not publish.